UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



02 - 22882

COMPAÑÍA DE TELECOMUNICACIONES
DE EL SALVADOR, S.A. DE C.V.,
d/b/a TELECOM,
an El Salvador corporation,

      Plaintiff,

v.

FUSION TELECOMMUNICATIONS
INTERNATIONAL, INC.,
a Delaware corporation,

      Defendant.

_____/

Case No.:

MAGISTRATE JUDGE
SIMONTON

## COMPLAINT

Plaintiff, COMPAÑÍA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE

C.V., d/b/a TELECOM ("Plaintiff" or "Telecom"), sues Defendant, FUSION TELECOM-

MUNICATIONS INTERNATIONAL, INC. ("Defendant" or "Fusion") and alleges:

### Jurisdiction, Venue, and the Parties

1.      This is an action for breach of a written contract and recovery of damages from

Defendant in excess of $2,000,000.00, exclusive of interest, costs, and attorney's fees.

2.      Plaintiff Telecom is an El Salvador corporation with its principal business office

in the city of San Salvador, in the Republic of El Salvador, in Central America.

3.      Defendant Fusion is a Delaware corporation licensed to do, and doing, business in

the state of Florida, with business offices in Fort Lauderdale, Broward County,  and a registered

agent in Delray Beach, Palm Beach County, within this District.



4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because it involves a dispute between a citizen of a State and a citizen of a foreign state, and the matter in controversy involves a claim to recover more than $75,000.00 in potential damages, excluding interest and costs.

5.      Venue is proper in this District under 28 U.S.C. §1391(a), (c), because the Defendant is located and doing business, and resides, in this District.

### General Allegations

6.      Plaintiff Telecom is the largest telephone company in the Republic of El Salvador, where its facilities for national and international service to the public includes approximately 380,000 telephone lines and 611,000 subscribers. Telecom provides telecommunications services for international origination and termination in El Salvador.

7.      Defendant Fusion is a specialized international communications carrier with its business offices and facilities in the United States. Fusion provides telephone services such as the transport of international voice, Tier 1 Internet access, and Private Networks, between the United States and foreign countries – especially in Asia, Latin America, and the Caribbean -- to corporations, telecommunications carriers, Internet Service Providers and Applications Service Providers, including to Plaintiff Telecom.

8.      On or about June 15, 2000, Plaintiff and Defendant entered into a written Carrier Services Agreement ("CSA"). A true and correct copy of the CSA, which is in full force and effect, is attached hereto as Exhibit 1 and is incorporated herein by reference.

9.      Prior to filing this action, more than sixty days have elapsed during which Telecom has sought to negotiate an amicable settlement with Fusion of the dispute giving rise to this action, to no avail.

2

10.     All conditions precedent to the filing of this action have been performed, excused, satisfied, or waived.

11.     By submitting itself voluntarily to the jurisdiction of this Court, Telecom waives any contractual right it may have to have this dispute decided through arbitration or court adjudication in El Salvador.

12.     Telecom has agreed to pay its attorneys in this action a reasonable fee for their services rendered in commencing and prosecuting this action.

**Count I**
**(Breach of Contract)**

13.     Telecom realleges and reasserts the allegations of paragraphs 1-12 as though fully set forth herein.

14.     Pursuant to the CSA, Telecom agreed to, inter alia, employ its facilities to terminate for Fusion all telephone traffic delivered to El Salvador by or for Fusion.

15.     Telecom has provided to Fusion all services required of Telecom under the CSA, and has otherwise complied fully and in a timely manner with all of its obligations to Fusion under the CSA.

16.     As stipulated in the CSA, Telecom has invoiced Fusion periodically for its services, seeking payment of the amounts due by Fusion to Telecom under the CSA.

17.     In direct and material breach of its contractual obligations to Telecom under the CSA, Fusion has failed – despite repeated demand therefor – to make all of the payments it owes to Telecom for services provided since January of 2002. Copies of the seven most recent outstanding and unpaid invoices submitted by Telecom to Fusion between March 8 and August

3

7, 2002, are attached hereto as Composite Exhibit 2, together with a summary chart (entitled "Situación de Cuentas con Fusion"), and are incorporated herein by reference.

18.    Fusion owes Telecom the sum of $2,026,588.07 for services provided by Telecom to Fusion under the CSA as of July 31, 2002, together with all sums that may become due thereafter so long as the CSA remains in effect, plus interest at the legal rate.

WHEREFORE, Plaintiff, COMPAÑÍA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V., d/b/a TELECOM, demands judgment against Defendant, FUSION TELECOMMUNICATIONS INTERNATIONAL, INC., awarding Plaintiff money damages in the amount of $2,026,588.07, or such other amount as is proved by the evidence in this action, together with attorney's fees, costs, and prejudgment interest, and also awarding Plaintiff such other and further relief as this Court deems just and proper.

Morgan, Lewis & Bockius LLP
Attorneys for Plaintiff TELECOM
5300 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131-2339
Telephone:     305.579.0488
Facsimile:      305.579.0321

Angel Castillo, Jr.
Florida Bar No. 0273465
E-mail: acastillo@morganlewis.com
Marlene Rodriguez
Florida Bar No. 0120057
E-mail:mrodriguez@morganlewis.com

Dated: September 27, 2002

1-MI/459565.1

4

# EXHIBIT 1

# CARRIER SERVICES AGREEMENT

*(Fusion Purchases Termination Services to Terminate in Another Country)*

This agreement ("Agreement") is entered into as of this 15 day of June 2000, between **FUSION TELECOMMUNICATIONS INTERNATIONAL, INC.**, a Delaware corporation, with its principal place of business at 15 Exchange Place, Suite 503, Jersey City, New Jersey 07302, United States of America, Attention: Executive Vice President–International ("Buyer"), and Compania Telecomunicaciones de El Salvador, S.A. de C.V., a Salvadorian corporation, with its principal place of business at Torre Telecom, Alameda F.D. Roosevelt y 63 Av. Sur, San Salvador, El Salvador, Attention: Director Commercial ("Seller"). Seller and Buyer are referred to collectively as the "Parties" and individually as the "Party."

## RECITALS

WHEREAS, Seller provides telecommunications services for international origination and termination in the country of El Salvador the "Country";

WHEREAS, the Parties wish to provide the international telecommunications services between the United States and the Country, upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, for and in consideration of the recitals, promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

## SECTION 1. SERVICES

1.1

A. **Effective Date of the Agreement.** This Agreement is effective and binding between the Parties as of the date when Buyer commences sending traffic to Seller (the "**Service Commencement Date**").

B. **Minimum Service Term.** The Parties obligations hereunder with respect to the Services shall begin from the date of Service Interconnection (defined below) and continue for a period of 12 months (the "**Service Term**"). Upon expiration of the Service Term, the Services shall continue to be provided on a month-to-month basis subject to termination as provided herein, unless either party cancels this Agreement at the end of the Service Term by giving the other party sixty (60) days advance written notice. The Buyer shall be liable and obliged to pay the Seller for all charges associated with the Services in question during the Service Term and any month-to-month continuation thereof according to Rate Schedule A.

C. **Rates.** The rates for services rendered under this Agreement shall be as set forth in Schedule A and the rates for terminations on the network of CTE, SA de CV and any of its affiliates or subsidiaries, including Personal, shall be the same. These rates shall be adjusted according with the settlement rates between El Salvador and USA.

D. **Billing Increments.** Unless otherwise specified in Rate Schedule A, Seller will calculate the length of each call based upon a minimum billing period of 30 seconds with rounding to the next higher 6 second period.

Fusion Carrier Service Agreement

Initials: YC

Revision Date: January 3, 2000

E.  *Satellite/Cable Bandwidth.* Buyer will have the right to approve, in its reasonable judgment, the satellite/cable provider to be used for connectivity between the Countries and the Seller's or Buyer's (as the case may be) facility in the United States. Buyer will be solely responsible for contracting the satellite service provider and the payment to said provider, and if said bandwidth is provided by Seller at Buyer's expense, Seller shall provide such bandwidth at its cost without markup.

F.  *In Country Termination:* Seller agrees to terminate for Buyer any and all traffic delivered by Buyer.

### 1.2 Service Interconnections

For the Buyer to obtain and utilize certain Services, a physical connection ("**Service Interconnection**") between the Buyer's network and the Seller's Point-of-Presence (POP) facilities must be established. The Buyer is responsible for establishing the Service Interconnection subject to the Seller's approval, and shall bear the cost of the Service Interconnection. The Service Interconnection point of demarcation shall be as set forth in Schedule B.

### 1.3 Buyer Obligations and Responsibilities:

A.  *Buyer Facilities.* The Buyer has the sole responsibility for installing, testing, operating and paying the costs associated with all facilities, services and equipment ("**Buyer Facilities**") other than those specifically provided by the Seller.

B.  *Billing.* The Buyer will cooperate fully with the Seller's billing practices and shall not act in any manner to circumvent the Seller's ability to charge for services. Except as otherwise agreed to in writing between the Seller and the Buyer, the Buyer is solely responsible for billing and collection of all accounts, subscribers or end-users to which the Buyer provides the Services.

The Buyer shall be solely liable to the Seller for amounts it cannot collect from its subscribers or end-users, as well as any adjustments the Buyer grants its subscribers or end-users, including adjustments for fraudulent charges, directory assistance or any other billing.

### 1.4 Seller Obligations, Responsibilities and Associated Matters

A.  *Availability of Services.* The Seller shall in good faith make every effort to ensure availability of Services to the Buyer.

B.  *Notification.* The Seller shall provide written notice of any price decrease given to any other carrier fifteen (15) days prior to the changes going into effect. Such notice shall include the amount and the effective date of the price change and the same will be given to Buyer.

C.  *Timing.* The Seller shall in good faith process all Buyer requests in a timely and accurate manner.

D.  *Quality and Maintenance of Network.* The Seller will maintain and operate the network management system responsible for monitoring network quality between the Buyer and the Seller and from the Seller to traffic destinations. Upon the identification of a network problem, Seller will immediately notify the appropriate

Page 2 of 9

Fusion Carrier Service Agreement

Initials: ___ ___

network provider according to a predetermined escalation procedure mutually agreed upon by the parties.

## 2   Charges and Payment Terms.

A.   _Taxes._   Unless otherwise specified on Schedule A, it is assumed that there are no use, excise, gross receipt, sales and privileges taxes; duties, fees or other taxes or similar governmental charges, whether charged to or against the Seller or the Buyer arising from Services furnished to the Buyer ("**Additional Charges**").

B.   _Billing Discrepancies and Disputes._   The Buyer has thirty (30) business days to notify the Seller, in writing and in reasonable detail, of any billing discrepancies and disputes from the date of invoice in question. The Seller shall not be obliged to consider any Buyer notice of billing discrepancies which is received more than thirty (30) business days following the date of the invoice in question.

C.   _Resolution of differences._ The Parties shall negotiate in good faith to resolve any dispute or claim arising out of or relating to this Agreement. If, after sixty (60) days, the Parties fail to reach agreement, such dispute, controversy or claim may be submitted for the exclusive adjudication pursuant to the laws of El Salvador and in the courts of the judicial district of San Salvador, Republic of El Salvador.

D.   _Charges and Payment Terms._   The Seller will bill for Services on a monthly basis, commencing one month after the date of Service Interconnection. The Buyer will pay in full, without deduction or offset of any kind, the invoice received from the Seller within fifteen (15) business days of the invoice date set forth on each Seller invoice (the "**Due Date**"). All payments hereunder shall be made via check or bank wire transfer in US dollars.

_Suspension of Services._ If payment in full is not received from the Buyer by the Due Date, the Seller shall have the right to suspend all or any portion of the Services to the Buyer until such time as the Buyer has paid in full all charges then due, including any late fees. Following such payment, the Seller shall reinstate the Services to the Buyer.

## 6.   Warranty.

The Seller makes no warranties to the Buyer or any other person or entity, whether expressed, implied, or statutory as to the description, quality merchantability, completeness or fitness for any purpose of any Service provided hereunder or described herein.

## 7.   Default .

A.   _Termination._   This Agreement and the relationship of the Parties may be terminated by the aggrieved party on the occurrence of any of the following events:

(i)   By the Seller, if the Buyer fails to make any payment when due, and fails to cure said default within three (3) days after receipt of notice, in writing, of such default.

Fusion Carrier Service Agreement

Revision Date: January 3, 2000

Initials: _YG_ _YND_

(ii)   By the Buyer, if the Seller fails to provide the Service as agreed under this Agreement.

(iii)   As relates to either party, upon the (a) insolvency, arrangement with creditors, receivership or dissolution; (b) institution of bankruptcy proceedings; (c) assignment or attempted assignment of the Agreement or any interest therein, except as permitted by Section 16 thereof; or (d) breach of any provision herein not otherwise referred to in this section and failure to cure within 30 days following written notice thereof or if a final order is instituted be a government entity with appropriate jurisdiction that a Service or the relationship hereunder is contrary to law or regulation.

## 8.   Liability: General Indemnity

A.   *Limited Liability*. In no event will the any party be liable to the other for any indirect, special, incidental or consequential loss or damages including without limitation loss of revenue, loss of subscribers or clients, loss of goodwill or loss of profits arising in any manner from this Agreement and the performance or non-performance or obligations hereunder. Neither party shall have any liability with respect to the installation (including delays thereof), or provisioning of any services or facilities offered under this Agreement.

B.   *General Indemnity*. In the event the Buyer or third parties other than the Buyer shall have use of the Services through the Buyer, the Buyer agrees to forever indemnify and hold the Seller harmless from and against any and all claims, demand, suits, actions, losses, damages, assessments (including without limitation attorney's fees) or payments which may be asserted by said parties arising from or relating to any defect in the Services.

## 9.   Force Majeure.

Neither party shall be liable for any failure of performance hereunder due to causes beyond its reasonable control, including, but not limited to: acts of God, fire, explosion, vandalism, cable cut, storm or other similar catastrophes; any law, order, regulation, direction, action or request of the United States government, or of any other government, including foreign, state and local governments having jurisdiction over either of the parties or the Services, or of any department, agency, commission, court, bureau, corporation or other instrumentality of any one or more of said governments, or of any civil or military authority; national emergencies; insurrections; riots; wars; or strikes, lock outs, work stoppages or other labor difficulties.

## 10.   Notices.

All notices, including but not limited to, demands, requests and other communications required or permitted to be sent hereunder, shall be in writing and shall be deemed to be delivered when actually received, whether upon personal delivery or if sent by facsimile, mail or overnight delivery. All notices shall be addressed to the respective addresses set forth on the first page of this Agreement, or to such other address as each of the Parties hereto may notify the other in writing.

## 11.   No Waiver.

Fusion Carrier Service Agreement

Revision Date: January 3, 2000

Initials: _YG_ _JAR_

No term or provision of this Agreement shall be deemed waived and no breach or default shall be deemed excused unless such waiver or excusal shall be in writing and signed by the Party claimed to have waived or consented. No consent by any Party to, or waiver of, a breach or default by the other, whether express or implied, shall constitute consent to, waiver of, or excuse for any different or subsequent breach or default.

12.    **Headings.**

The headings of the sections of this Agreement are inserted solely for convenience and do not form part of or affect the meaning hereof.

13.    **Confidential Information and Intellectual Property.**

A.    The Parties understand and agree that the terms and conditions of this Agreement, all documents referenced herein (including invoices to the Buyer for Services provided), communications between the Parties regarding this Agreement or the Services to be provided or actually provided hereunder and all information regarding the subscribers of the Buyer, as well as such information relevant to any other Agreement between the Parties are confidential as between the Buyer and the Seller (collectively, "**Confidential Information**"). The Buyer:

(i)    Agrees that all information communicated to it with respect to the proposed Services, whether or not that information was directly or intentionally communicated, is Confidential Information.

(ii)    Agrees that it shall not disclose any Confidential Information to any other person unless specifically authorized in writing by the Seller to do so. If the Seller gives the Buyer written authorization to make any disclosures, the Buyer shall do so only within the limits and to the extent of that authorization.

(iii)    Shall use its best efforts to prevent inadvertent disclosure of any Confidential Information to any third party. The Buyer shall instruct its personnel to keep that information confidential by using the same care and discretion that they use with the Buyers own confidential information.

(iv)    Acknowledges and agrees that all information concerning the Services and any future and proposed Services of the Seller or any of its affiliates constitutes an exceptionally valuable trade secret of the Seller.

B.    *Limited Disclosure.* A Party may disclose Confidential Information subject to discovery or pursuant to legal process as provided below, or to the directors, officers and employees of a party or a party's agents including its brokers, lenders, insurance carriers or bona fide prospective Buyers who have specifically agreed in writing to nondisclosure of the terms and conditions hereof. Any disclosure hereof required by legal process shall only be made after providing the non-disclosing Party with notice thereof in order to permit the non-disclosing Party to seek an appropriate protective order of exemption.

C.    *Remedies.* It is acknowledged by the Parties hereto that violation by a Party or its agents of the foregoing provisions shall entitle the non-disclosing Party at its option to obtain injunctive relief without showing of irreparable harm or injury and without bond.

Page 5 of 9

Fusion Carrier Service Agreement

Revision Date: January 3, 2000                                    Initials: _____ _____

D.   *Survival of Confidentiality.* The provisions of this section (Section 13) will be effective as of the date of this Agreement and shall remain in full force and effect for a period which will be the longer of (I) one (1) year following the date of this Agreement or (ii) one (1) year from the termination of all Services hereunder.

14.   **Regulations.**

This Agreement is made expressly subject to all present and future orders and regulations of any regulatory body having jurisdiction of the subject matter hereof and to the laws of the Republic of El Salvador, or any foreign governmental agency having jurisdiction. In the event this Agreement or any of its provisions is found to be contrary to or in conflict with any such order, rule, regulation or law, this Agreement shall be deemed modified to the extent necessary to comply with any such order, rule, regulation or law and shall be modified in such a way as is consistent with the form, intent and purpose of this Agreement. In the event this Agreement or any of is provisions are found contrary to or in conflict with any tariff of the Seller, the Buyer will allow the Seller the opportunity to amend the tariff to conform under the Services of this Agreement.

15.   **Governing Law.**

A.   *Law.* This Agreement shall be construed under the laws of El Salvador, without regard to conflict of law principles.

B.   *Disputes.* Any disputes arising out of or relating to the Agreement shall be resolved by arbitration in El Salvador.

16.   **Binding Effect.**

All terms and conditions hereof shall be binding upon and inure to the benefit of and be enforceable by the successors and assigns of the representative Parties hereto. The Seller may assign the whole or any part of this Agreement at any time upon five (5) days written notice to the Buyer. The Buyer without prior written consent of the Seller may not assign this Agreement, however Seller will not unreasonably withhold assignment.

Fusion Carrier Service Agreement

Revision Date: January 3, 2000

Initials:

SEP 25 2002 12:30                                                                    PAGE.07

17.    **Counterparts.**

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and, when taken together, shall constitute one single agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date written above.

Seller:                          Buyer:

**COMPANIA**                      **FUSION TELECOMMUNICATIONS**
**TELECOMMUNICACIONES**           **INTERNATIONAL, INC.**
**DE EL SALVADOR, S.A. DE C.V.**

By: _____              By: _____
Name:  YVES GAU THIER            Name:
Title: DIRECTOR COMERCIAL        Title:

Page 7 of 9

Fusion Carrier Service Agreement

Revision Date: January 3, 2000

Initials: _____  _____

### Rate Schedule A

For each minute terminated in El Salvador, US$0.255 per minute, and Seller will give Buyer the benefit of any price reduction given to any other USA carrier.

Buyer will be responsible for all satellite bandwidth charges, and may request to purchase such bandwidth from Seller at Seller's cost without markup, in view of fact Buyer will supply its own compression equipment and will be compressing at 8:1 or better, except that Seller will charge Buyer US$0.005 per minute for use of Seller's earth station and all other of its equipment and facilities.

Buyer will provide its own compression equipment on both sides of circuit, and may install and collocate such equipment at Seller's El Salvador earth station or switch in order to utilize such earth station. Seller will provide collocation facilities at such earth station or switch and interconnect from the earth station to its switches.

Page 8 of 9

Fusion Carrier Service Agreement

Initials: Y6 _____

Revision Date: January 3, 2000

## Schedule B
### Point of Interconnection / Demarcation

At output end of Buyer's compression equipment installed at Seller's El Salvador earth station or switch, as the case may be.

Page 9 of 9

Fusion Carrier Service Agreement

Revision Date: January 3, 2000

Initials: Y.G.

**EXHIBIT 2**

| SITUACION DE CUENTAS CON FUSION | | | | |
|---|---|---|---|---|
| **PERIODO** | **FECHA DE ENVIO** | **MONTO US $** | **PAGO RECIBIDO** | **SALDO** |
| ENERO 2002 | 08-Mar-02 | 429,108.90 | 320,517.53 | 108,591.37 |
| FEBRERO 2002 | 26-Mar-02 | 352,185.85 | | 352,185.85 |
| MARZO 2002 | 15-Abr-02 | 415,815.15 | | 415,815.15 |
| ABRIL 2002 | 17-May-02 | 316,067.77 | | 316,067.77 |
| MAYO 2002 | 21-Jun-02 | 270,045.70 | | 270,045.70 |
| JUNIO 2002 | 10-Jul-02 | 211,937.76 | | 211,937.76 |
| JULIO 2002 | 07-Ago-02 | 351,944.47 | | 351,944.47 |
| TOTAL | | 2,347,105.60 | 320,517.53 | 2,026,588.07 |

**COMPAÑÍA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V.**
**( C.T.E., S.A. DE C.V.)**

San Salvador, 07 de marzo de 2002

Anna-María Gálvez
Asistente Ejecutiva
Desarrollo de Negocios Internacionales

De acuerdo a nuestros registros y a los términos de los acuerdos de terminación de tráfico, para efecto de pago, le detallo los registros del tráfico del mes de enero de 2002.

| TIPO DE TRAFICO | MINUTOS | TARIFA | TOTAL US $ |
|---|---|---|---|
| TERMINADO RED DE C.T.E. Y OTRAS REDES | 3,374,931 | 0.085 | 286,869.14 |
| TERMINADO RED DE TELEMOVIL | 988,530 | 0.085 | 84,025.05 |
| TERMINADO RED DE TELEFONICA | 684,879 | 0.085 | 58,214.71 |
| TOTAL | 5,048,340 | | 429,108.90 |

Mucho apreciaremos que la cantidad de US $ 429,108.90 sea liquidada por medio de transferencia cablegráfica, como sigue:

**CITIBANK NEW YORK**                     Abono  $  320,517.53
**111 Wall Street**                       Pendiente  $  108,591.37
**N.Y. 10043 USA**
**Cuenta: 36181229**
**ABA: 021000089**
**SWIFT CODE: CITIUS33**
**Beneficiario:** Compañía de Telecomunicaciones de El Salvador, S.A. de C.V.
**(C.T.E., S.A. de C.V.)**

Atentamente,

Luis Manzano

**TELECOM**
**OPERADORES**
**INTERNACIONALES.**

Jefe Depto. Operadores Internacionales

DEPARTAMENTO DE OPERADORES INTERNACIONALES
CENTRO FINANCIERO SISA, EDIF. 45, NIVEL 2, LOCAL 12
KM 10 ½ CARRETERA A NUEVA SAN SALVADOR
LA LIBERTAD, EL SALVADOR, CENTROAMERICA
TEL: (503) 2717440 FAX (503) 2717448

**COMPAÑIA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V.**
**( C.T.E., S.A. DE C.V.)**

San Salvador, 25 de marzo de 2002

Anna-María Gálvez
Asistente Ejecutiva
Desarrollo de Negocios Internacionales

De acuerdo a nuestros registros y a los términos de los acuerdos de terminación de tráfico, para efecto de pago, le detallo los registros del tráfico del mes de febrero de 2002.

| TIPO DE TRAFICO | MINUTOS | TARIFA | TOTAL US $ |
|---|---|---|---|
| TERMINADO RED DE C.T.E. Y OTRAS REDES | 2,470,901 | 0.085 | 210,026.58 |
| TERMINADO RED DE TELEMOVIL | 1,090,144 | 0.085 | 92,662.24 |
| TERMINADO RED DE TELEFONICA | 582,318 | 0.085 | 49,497.03 |
| TOTAL | 4,143,363 | | 352,185.85 |

Mucho apreciaremos que la cantidad de US $ 352,185.85 sea liquidada por medio de transferencia cablegráfica, como sigue:

**CITIBANK NEW YORK**
**111 Wall Street**
**N.Y. 10043 USA**
Cuenta: 36181229
ABA: 021000089
SWIFT CODE: CITIUS33
Beneficiario: Compañía de Telecomunicaciones de El Salvador, S.A. de C.V.
(C.T.E., S.A. de C.V.)

Atentamente,

Luis Manzano
Jefe Depto. Operadores Internacionales

**TELECOM**
OPERADORES
INTERNACIONALES

DEPARTAMENTO DE OPERADORES INTERNACIONALES
CENTRO FINANCIERO SISA, EDIF #3, NIVEL 2, LOCAL 12
KM 10 ½ CARRETERA A NUEVA SAN SALVADOR
LA LIBERTAD, EL SALVADOR, CENTROAMERICA
TEL: (503) 2717440 FAX (503) 2717448

COMPAÑÍA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V.
( C.T.E., S.A. DE C.V.)

San Salvador, 15 de abril de 2002

**Anna-María Gálvez**
**Asistente Ejecutiva**
**Desarrollo de Negocios Internacionales**

De acuerdo a nuestros registros y a los términos de los acuerdos de terminación de tráfico, para efecto de pago, le detallo los registros del tráfico del mes de marzo de 2002.

| TIPO DE TRAFICO | MINUTOS | TARIFA | TOTAL US $ |
|---|---|---|---|
| TERMINADO RED DE C.T.E. Y OTRAS REDES | 2,675,647 | 0.085 | 227,429.99 |
| TERMINADO RED DE TELEMOVIL | 140,691 | 0.085 | 11,958.73 |
| TERMINADO RED DE TELEMOVIL | 1,242,341 | 0.1025 | 127,339.95 |
| TERMINADO RED DE TELEFONICA | 577,488 | 0.085 | 49,086.48 |
| TOTAL | 4,636,167 | | 415,815.15 |

Mucho apreciaremos que la cantidad de US $ 415,815.15 sea liquidada por medio de transferencia cablegráfica, como sigue:

**CITIBANK NEW YORK**
**111 Wall Street**
**N.Y. 10043 USA**
**Cuenta: 36181229**
**ABA: 021000089**
**SWIFT CODE: CITIUS33**
**Beneficiario: Compañía de Telecomunicaciones de El Salvador, S.A. de C.V.**
**(C.T.E., S.A. de C.V.)**

Atentamente,

**TELECOM**
OPERADORES
INTERNACIONALES

Luis Martínez
Jefe Depto. Operadores Internacionales

DEPARTAMENTO DE OPERADORES INTERNACIONALES
CENTRO FINANCIERO SISA, EDIF. #3, NIVEL 2, LOCAL 12
KM 10 ½ CARRETERA A NUEVA SAN SALVADOR
LA LIBERTAD, EL SALVADOR, CENTROAMERICA
TEL: (503) 2717440 FAX (503) 2717445

Atencion: Julie Pr.

# COMPAÑÍA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V.
## ( C.T.E., S.A. DE C.V.)

San Salvador, 17 de mayo de 2002

Anna-María Gálvez
Asistente Ejecutiva
Desarrollo de Negocios Internacionales

De acuerdo a nuestros registros y a los términos de los acuerdos de terminación de tráfico, para efecto de pago, le detallo los registros del tráfico del mes de abril de 2002.

| TIPO DE TRAFICO | MINUTOS | TARIFA | TOTAL US $ |
|---|---|---|---|
| TERMINADO RED DE C.T.E. Y OTRAS REDES | 2,636,538 | 0.085 | 224,105.73 |
| TERMINADO RED DE TELEMOVIL | 644,646 | 0.1025 | 66,076.22 |
| TERMINADO RED DE TELEFONICA | 304,539 | 0.085 | 25,885.82 |
| TOTAL | 3,585,723 | | 316,067.77 |

Mucho apreciaremos que la cantidad de US $ 316,067.77 sea liquidada por medio de transferencia cablegráfica, como sigue:

**CITIBANK NEW YORK**
**111 Wall Street**
**N.Y. 10043 USA**
**Cuenta: 36181229**
**ABA: 021000089**
**SWIFT CODE: CITIUS33**
Beneficiario: Compañía de Telecomunicaciones de El Salvador, S.A. de C.V.
(C.T.E., S.A. de C.V.)

Atentamente,

**TELECOM**
OPERADORES
INTERNACIONALES

~~Luis Manzano~~
Jefe Depto. Operadores Internacionales

DEPARTAMENTO DE OPERADORES INTERNACIONALES
CENTRO FINANCIERO SISA, EDIF. #3, NIVEL 2, LOCAL 11
KM 10 ½ CARRETERA A NUEVA SAN SALVADOR
LA LIBERTAD, EL SALVADOR, CENTROAMERICA
TEL: (503) 2717446 FAX (503) 2717446

**COMPAÑÍA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V.**
**( C.T.E., S.A. DE C.V.)**

San Salvador, 20 de junio de 2002

Anna-María Gálvez
Asistente Ejecutiva
Desarrollo de Negocios Internacionales

De acuerdo a nuestros registros y a los términos de los acuerdos de terminación de tráfico, para
efecto de pago, le detallo los registros del tráfico del mes de mayo de 2002.

| TIPO DE TRAFICO | MINUTOS | TARIFA | TOTAL US $ |
|---|---|---|---|
| TERMINADO RED DE C.T.E. Y OTRAS REDES | 2,756,174 | 0.085 | 234,274.79 |
| TERMINADO RED DE TELEMOVIL | 246,317 | 0.1025 | 25,247.49 |
| TERMINADO RED DE TELEFONICA | 123,805 | 0.085 | 10,523.42 |
| TOTAL | 3,126,296 | | 270,045.70 |

Mucho apreciaremos que la cantidad de US $ 270,045.70 sea liquidada por medio de transferencia
cablegráfica, como sigue:

**CITIBANK NEW YORK**
**111 Wall Street**
**N.Y. 10043 USA**
**Cuenta: 36181229**
**ABA: 021000089**
**SWIFT CODE: CITIUS33**
**Beneficiario: Compañía de Telecomunicaciones de El Salvador, S.A. de C.V.**
**(C.T.E., S.A. de C.V.)**

Atentamente,

TELECOM
OPERADORES
INTERNACIONALES

Luis Manzano
Jefe Depto. Operadores Internacionales

COMPAÑÍA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V.
( C.T.E., S.A. DE C.V.)

San Salvador, 10 de julio de 2002

Anna-María Gálvez
Asistente Ejecutiva
Desarrollo de Negocios Internacionales

De acuerdo a nuestros registros y a los términos de los acuerdos de terminación de tráfico, para efecto de pago, le detallo los registros del tráfico del mes de junio de 2002.

| TIPO DE TRAFICO | MINUTOS | TARIFA | TOTAL US $ |
|---|---|---|---|
| TERMINADO RED DE C.T.E. Y OTRAS REDES | 2,058,811 | 0.085 | 174,998.94 |
| TERMINADO RED DE TELEMOVIL | 257,532 | 0.1025 | 26,397.03 |
| TERMINADO RED DE TELEFONICA | 124,021 | 0.085 | 10,541.79 |
| TOTAL | 2,440,364 | | 211,937.76 |

Mucho apreciaremos que la cantidad de US $ 211,937.76 sea liquidada por medio de transferencia cablegráfica, como sigue:

CITIBANK NEW YORK
111 Wall Street
N.Y. 10043 USA
Cuenta: 36181229
ABA: 021000089
SWIFT CODE: CITIUS33
Beneficiario: Compañía de Telecomunicaciones de El Salvador, S.A. de C.V.
(C.T.E., S.A. de C.V.)

Atentamente,

Luis Manzano

**TELECOM**
OPERADORES
INTERNACIONALES

Jefe Depto. Operadores Internacionales

# COMPAÑÍA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V.
## ( C.T.E., S.A. DE C.V.)

San Salvador, 1 de agosto de 2002

Anna-María Galvez
Asistente Ejecutiva
Desarrollo de Negocios Internacionales

De acuerdo a nuestros registros y a los términos de los acuerdos de terminación de tráfico, para efecto de pago, le detallo los registros del tráfico del mes de julio de 2002.

| TIPO DE TRAFICO | MINUTOS | TARIFA | TOTAL US $ |
|---|---|---|---|
| TERMINADO RED DE C.T.E. Y OTRAS REDES | 3,320,430 | 0.085 | 282,236.55 |
| TERMINADO RED DE TELEMOVIL | 502,233 | 0.095 | 47,712.13 |
| TERMINADO RED DE TELEFONICA | 258,774 | 0.085 | 21,995.79 |
| TOTAL | 4,081,437 | | 351,944.47 |

Mucho apreciaremos que la cantidad de US $ 351,944.47 sea liquidada por medio de transferencia cablegráfica, como sigue:

**CITIBANK NEW YORK**
**111 Wall Street**
**N.Y. 10043 USA**
**Cuenta: 36181229**
**ABA: 021000089**
**SWIFT CODE: CITIUS33**
**Beneficiario: Compañía de Telecomunicaciones de El Salvador, S.A. de C.V.**
**(C.T.E., S.A. de C.V.)**

Atentamente,

Luis Manzano

**TELECOM**
OPERADORES
INTERNACIONALES

Jefe Depto. Operadores Internacionales

DEPARTAMENTO DE OPERADORES INTERNACIONALES
CENTRO FINANCIERO SISA, EDIF. #9, NIVEL 2, LOCAL 12
KM 12 ½ CARRETERA A NUEVA SAN SALVADOR
LA LIBERTAD, EL SALVADOR, CENTROAMERICA
TEL: (503) 2717440 FAX (503) 2717445

AUG 27 2002 14:30

PAGE 09

JS 44
(Rev. 8/01)

# CIVIL COVER SHEET

02 22882 CIV-GOLD

JUDGE SIMONTON

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Compañia De Telecomunicaciones De El Salvador, S.A. De C.V., d/b/a Telecom

**DEFENDANT**

Fusion Telecommunications International, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF El Salvador
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Angel Castillo, Jr., Esq.
Morgan, Lewis & Bockius LLP
5300 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2339
(305) 579-0488

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: MIAMI-DADE COUNTY

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☒1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☒3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment Enforcement of Judgment | ☐ 330 Federal Employers Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **B SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S.) Plaintiff or Defendant | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS– Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions A or B |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All other Real Property | FMLA | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) Breach of contract – damages. 28 U.S.C. §§ 1332.

LENGTH OF TRIAL
Via 3 days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ in excess of $2,000,000

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): Judge _____ DOCKET NUMBER _____

DATE 9-27-02     SIGNATURE OF ATTORNEY OF RECORD  *Angel Castillo, Jr.*     Angel Castillo, Jr.

FOR OFFICE USE ONLY
RECEIPT# ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___

1-MI/459578.1