UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-22882-CIV-GOLD/SIMONTON

COMPANIA DE TELECOMUNICACIONES DE
EL SALVADOR, S.A. DE C.V., d.b.a TELECOM,
an El Salvador corporation

        Plaintiff,

vs.

FUSION TELECOMMUNICATIONS
INTERNATIONAL, INC., a Delaware corporation,

        Defendant.
_____/



## ANSWER / AFFIRMATIVE DEFENSES / COUNTERCLAIM

Defendant / Counterclaimant, FUSION TELECOMMUNICATIONS INTERNATIONAL, INC. (hereinafter referred to as "Fusion" or "defendant"), by and through its undersigned counsel, as for its Answer, Affirmative Defenses and Counterclaim against plaintiff, COMPANIA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V., d.b.a. TELECOM (hereinafter referred to as "Telecom" or "plaintiff") states as follows:

### ANSWER

1. Admitted.

2. Without knowledge to admit or deny.

3. Admit defendant is a Delaware corporation licensed to do, and doing, business in the State of Florida. Denied that it has business offices in Fort Lauderdale, Broward County. Admit it has a registered agent in Delray Beach, Palm Beach County, within this District.

4. Admitted.

5. Admit venue is proper in this District. Deny defendant resides in this District.

6. Defendant is without knowledge to admit or deny.

7. Admitted.

8. Admit plaintiff and defendant entered into the CSA. Deny the CSA is in full force and effect.

9. Denied.

10. Denied.

11. Admitted.

12. Defendant is without knowledge to admit or deny.

13. Defendant reasserts its reply to paragraphs 1-12.

14. Admitted.

15. Denied.

16. Admitted.

17. Denied plaintiff was/is in direct and material breach of its contractual obligations to plaintiff under the CSA. Denied defendant owes the plaintiff the amount claimed on the invoices.

18. Denied.

## AFFIRMATIVE DEFENSES

## SET-OFF

1. Defendant is entitled to a set-off against the amounts claimed by the plaintiff for damages caused the defendant by the wrongful conduct of the plaintiff as alleged in the countercomplaint.

## FRUSTRATION OF PURPOSE

2. The defendant is discharged from the obligation under the written contract after being noticed by the plaintiff that the purposes for which it had bargained, and which purposes were known to plaintiff, had been frustrated.

## HINDERING PERFORMANCE

3. The plaintiff prevented and or hindered the performance of the defendant by failing to provide the defendant with the agreed upon rate discounts, failing to provide Fusion with the lowest rates from the United States to El Salvador (hereinafter the "Lowest US Rate") and failing to provide Fusion credits which it was entitled.

## DISCHARGE

4. The plaintiff committed the first breach and therefore the defendant is discharged from its contractual liability.

## CONTRACT INDUCED BY FRAUD

5. The plaintiff, by a series of promises, which the defendant reasonably relied upon, fraudulently induced the defendant to enter into the CSA.

## COUNTERCLAIM

## JURISDICTION, VENUE AND THE PARTIES

1.   No new grounds are necessary to support subject matter jurisdiction of the counterclaim.

2.   No new grounds are necessary to support venue in this District.

3.   COMPANIA DE TELECOMUNICACIONES DE EL SALVADOR, S.A. DE C.V., d.b.a. TELECOM voluntarily submitted itself to the jurisdiction of this Court and waived any contractual right it may have to have this dispute decided through arbitration or court adjudication in El Salvador.

4.   FUSION TELECOMMUNICATIONS INTERNATIONAL, INC. (hereinafter referred to as "Fusion") is a corporation duly authorized and existing pursuant to the laws of the State of Delaware, with its principal place of business located in New York City, New York. Fusion is a foreign corporation with authority to conduct business in the State of Florida.

5.   Upon information and belief COMPANIA DE TELECOMUNICACIONES DE

EL SALVADOR, S.A. DE C.V., d.b.a. TELECOM (hereinafter referred to as "Telecom") is, upon information and belief, an El Salvador corporation with its principal office in the city of San Salvador, in the Republic of El Salvador, in Central America.

## STATEMENT OF FACTS

6.    That prior to the date of an agreement between the parties, Telecom represented and warranted to Fusion that it would provide certain telecommunications services in a timely manner to meet Fusion's expressed needs and guaranteed Fusion it would receive the Lowest US Rate and Fusion reasonably relied upon Telecom's representations and warranties.

7.    Specifically, Telecom advised Fusion that if it entered into an agreement to purchase outbound telecommunications services, it would (i) provide Fusion with the ability to send a large amount of outbound traffic from the United States via Telecom in El Salvador to certain Latin American countries at preferred rates (hereinafter referred to as "Transit Traffic"), (ii) send a high volume of outbound traffic from Telecom to Fusion (hereinafter referred to as "Inbound Traffic") that would provide Fusion with substantial profits and allow Fusion to set off amounts owed to Telecom under the proposed carrier service agreement; and guaranteed the Lowest USA Rate.

8.    Relying on the representations and warranties made by Telecom, Fusion and Telecom entered into a carrier service agreement ("CSA"). A true and correct copy of the CSA is attached to Telecom's Complaint as Exhibit 1.

9. Also in reliance to the representations and warranties made by Telecom, Fusion spent a considerable amount of money to purchase equipment and entered into bandwidth contracts that had minimum purchase commitments.

10. In fact, Telecom never sent Fusion Inbound Traffic nor did it provide the Transit Traffic as promised, and based upon information and belief, failed to provide Fusion the Lowest USA Rate.

11. Fusion performed all conditions precedent and fully performed all of its obligations pursuant to the CSA.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF DEFENDANT / COUNTERCLAIMANT:

### BREACH OF CONTRACT (CSA)

12. Fusion herein repeats, reiterates and realleges each and every allegation contained in paragraphs of this countercomplaint numbered "1" through "11" inclusive, with the same force and effect as if fully set forth at length herein.

13. Pursuant to the CSA, Telecom agreed to give Fusion the benefit of any price reduction given to any other USA carrier, and agreed to provide Fusion the Lowest USA Rate.

14. Based upon information and belief, Telecom failed to give Fusion the benefit of any price reduction to any other USA carrier and in fact, in a material and direct breach of the

CSA, raised rates. Telecom, based upon information and belief, also failed to provide Fusion the Lowest USA Rate and failed to give Fusion credits it was due under the CSA.

15. The failure to give Fusion the rate reductions promised and in fact raising rates, caused Fusion to lose a significant amount of profit and customers.

16. On three different occasions, in a direct and material breach of the CSA, Telecom wrongfully shut down the network blocking the services to Fusion's customers.

17. Due to wrongful network disconnections, Fusion lost a substantial amount of customers and revenue that would have otherwise been derived therefrom.

18. Telecom breached the CSA by materially breaching the implied covenant of good faith and fair dealing.

19. Fusion was damaged by Telecom's breach in the following manner: (i) Fusion was compelled to expend money to cure the defects caused by the breach; (ii) in as much as Telecom failed to provide rate reductions, and give Fusion the Lowest USA Rate, Fusion was therefore caused to sustain a loss of profits which would necessarily have been earned if it had received the rate discounts; (iii) Fusion was required to enter into agreements with other telecommunications carriers and incur higher costs than if it had been permitted to complete the Agreement with Telecom; (iv) Fusion was unexpectedly required to terminate communication services to its customers; (v) Fusion was prohibited from temporarily selling services to some of its current and future clients; (vi) Fusion's reputation in the business community and with its

clients was damaged; (vii) Fusion was required to deploy many of its resources to solve the problems created by Telecom; (viii) Fusion was required to purchase equipment, expend money on resources and enter into long term contracts with suppliers that required minimum purchase commitments; and (ix) Fusion had to pay Telecom an amount in excess of any other USA carrier or receive the benefit of the Lowest USA Rate.

WHEREFORE, that as a result of the foregoing, Fusion demands judgment against Telecom, awarding Fusion money damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00), or such other amount as proved by the evidence in this action, along with attorneys' fees, costs, and prejudgment interest, and other relief as this Court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION ON
### BEHALF OF DEFENDANT / COUNTERCLAIMANT:

### FRAUDLENT INDUCEMENT
### MISREPRESENTATION

20. Fusion herein repeats, reiterates and realleges each and every allegation contained in paragraphs of this countercomplaint numbered "1" through "11" inclusive, with the same force and effect as if fully set forth at length herein.

21. That based upon information and belief, the representations made by Telecom that it would (i) provide Fusion with the ability to send a large amount of Transit Traffic, (ii) send a high volume of Inbound Traffic to Fusion that would in turn provide Fusion with substantial

profits and allow Fusion to set off amounts owed to Telecom under the proposed CSA, (iii) and provide Fusion with the Lowest USA Rate were false when made in order to induce Plaintiff to enter into the CSA and related commitments.

22.  Fusion did not discover the true facts with respect to the representations until they entered into the CSA, placed orders with Telecom, purchased equipment and committed to bandwidth contracts, nor could they have determined or discovered them with reasonable diligence prior to the date of the CSA.

23.  That upon information and belief the representations were known to be false when made or/and were made with a pretense of actual knowledge when knowledge did not actually exist; and/or were made recklessly and without regard to the actual facts; were made with the intention of deceiving and defrauding Fusion and were made in order to induce Fusion to enter into the CSA with the related commitments and demanded Fusion to pay the consideration stated therein.

24.  Fusion believed Telecom's representations to be true at the time they were made and relied upon therein, and were thereby induced to enter into the CSA, give the consideration and make the commitments hereinbefore referred.

25.  That had Fusion known that Telecom would not provide the Outbound Traffic and Transit Traffic or provide the Lowest USA Rate as represented prior to entering into the CSA, Fusion would not have entered into the Agreement, make the commitments, nor have paid the consideration they paid to Telecom.

26.     Fusion was damaged by Telecom's misrepresentation in the following manner: (i) Fusion was caused to sustain a loss of profits which would necessarily have been earned if it had received the Inbound Traffic from Telecom, Telecom provided Fusion with Transit Traffic and received with the Lowest USA Rate; (ii) in as much as Telecom did prevent Fusion from receiving the Inbound Traffic and Telecom, failed to provided Fusion with Transit Traffic and failed to provide Fusion the Lowest USA Rate, Fusion was required to enter into agreements with other telecommunications carriers and incur higher costs than if it had received the Inbound Traffic from Telecom, Telecom provided Fusion with Transit Traffic and provided Fusion the Lowest USA Rate; (iii) Fusion's reputation in the business community and with its clients was damaged; (iv) Fusion was required to deploy many of its resources to solve the problems created by Telecomp; and (v) Fusion was required to purchase equipment, expend money on resources and enter into long term contracts with suppliers that required minimum purchase commitments.

WHEREFORE, that as a result of the foregoing, Fusion demands judgment against Telecom, awarding Fusion money damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00), or such other amount as proved by the evidence in this action, along with attorneys' fees, costs, and prejudgment interest, and other relief as this Court deems just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION ON
## BEHALF OF DEFENDANT / COUNTERCLAIMANT:

### PROMISSORY ESTOPPEL

27.     Fusion herein repeats, reiterates and realleges each and every allegation contained in paragraphs of this countercomplaint numbered "1" through "11" inclusive, with the same force and effect as if fully set forth at length herein.

28.     Fusion detrimentally relied on a promise made by Telecom that Telecom would (i) provide Fusion with the ability to send a large amount of Transit Traffic, (ii) send a high volume of Inbound Traffic to Fusion that would in turn provide Fusion with substantial profits and allow Fusion to set off amounts owed to Telecom under the proposed CSA and (iii) provide Fusion with the Lowest USA Rate.

29.     Telecomp reasonably should have expected the promise to induce reliance in the form of action on the part of Fusion to enter into the CSA.

30.     Injustice can be avoided only by enforcement of the promise against Telecom.

31.     Fusion was damaged by Telecom's misrepresentation in the following manner: (i) in as much as Telecom failed to fulfill its promise, Fusion was therefore caused to sustain a loss of profits which would necessarily have been earned if it had fulfilled its promise; (ii) in as much as Telecom failed to fulfill its promise, Fusion was required to enter into agreements with other

telecommunications carriers and incur higher costs; (iii) Fusion was prohibited from temporarily selling services to some of its current and future clients; (iv) Fusion's reputation in the business community and with its clients was damaged; (v) Fusion was required to deploy many of its resources to solve the problems created by Telecomp; (vi) Fusion was required to purchase equipment, expend money on resources and enter into long term contracts with suppliers that required minimum purchase commitments.

WHEREFORE, that as a result of the foregoing, Fusion demands judgment against Telecom, awarding Fusion money damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00), or such other amount as proved by the evidence in this action, along with attorneys' fees, costs, and prejudgment interest, and other relief as this Court deems just and proper.

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF DEFENDANT / COUNTERCLAIMANT:

### BREACH OF CONTRACT TO PROVIDE FUSION TRANSIT TRAFFIC AND SEND INBOUND TRAFFIC TO FUSION

32. Fusion herein repeats, reiterates and realleges each and every allegation contained in paragraphs of this countercomplaint numbered "1" through "11" inclusive, with the same force and effect as if fully set forth at length herein.

33. Telecom promised and offered to Fusion that it would (i) provide Fusion with the ability to send a large amount of Transit Traffic and (ii) send a high volume of Inbound Traffic to

Fusion that would in turn provide Fusion with substantial profits and allow Fusion to set off amounts owed to Telecom if it entered into the CSA (the "Agreement").

34. Fusion accepted Telecom's offer by entering into the CSA.

35. The agreement was fully supported by consideration.

36. Telecom materially breached the agreement.

37. Fusion performed all conditions precedent.

38. Fusion was compelled to expend money to cure the defects caused by the breach; (i) in as much as Telecom did prevent Fusion from completing the Agreement, Fusion was therefore caused to sustain a loss of profits which would necessarily have been earned if it had been permitted to complete the Agreement; (ii) in as much as Telecom did prevent Fusion from completing the Agreement, Fusion was required to enter into agreements with other telecommunications carriers and incur higher costs than if it had been permitted to complete the Agreement with Telecom; (iii) Fusion was prohibited from temporarily selling services to some of its current and future clients; (iv) Fusion's reputation in the business community and with its clients was damaged; (v) Fusion was required to deploy many of its resources to solve the problems created by Telecomp; and (vi) Fusion was required to purchase equipment, expend money on resources and enter into long term contracts with suppliers that required minimum purchase commitments.

WHEREFORE, that as a result of the foregoing, Fusion demands judgment against

Telecom, awarding Fusion money damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00), or such other amount as proved by the evidence in this action, along with attorneys' fees, costs, and prejudgment interest, and other relief as this Court deems just and proper.

WHEREFORE, defendant / counterclaimant demands a jury trial on all matters.

Slinkman and Slinkman, P.A.
Attorneys for Defendant/ Counterclaimant
1401 Forum Way, Suite 201
West Palm Beach, Florida 33401
Telephone:   561-686-3400

Richard K. Slinkman, Esq.
Florida Bar No. 0058297

William R. Heitz, P.A.
Attorneys for Defendant/Counterclaimant
1801 South Federal Highway
Suite 237
Delray Beach, Florida 33483
Telephone:   561-274-7000
Facsimile:   561-274-7099

William R. Heitz, Esq.
Florida Bar No. 0007640

Dated: November 14, 2002

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via U.S. mail this _14_ day of _11/02_, to:

Angel Castillo, Jr., Esq.
Morgan, Lewis & Bockius LLP
5300 First Union Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131-2339

    Slinkman and Slinkman, P.A.
    Attorneys for Defendant/ Counterclaimant
    1401 Forum Way, Suite 201
    West Palm Beach, Florida 33401
    Telephone:   561-686-3400

    _____
    Richard K. Slinkman, Esq.
    Florida Bar No. 0058297

    William R. Heitz, P.A.
    Attorneys for Defendant/Counterclaimant
    1801 South Federal Highway
    Suite 237
    Delray Beach, Florida 33483
    Telephone:   561-274-7000
    Facsimile:   561-274-7099

    _____
    William R. Heitz, Esq.
    Florida Bar No. 0007640